**NOT FOR PUBLICATION**

THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HOSAM KHAFAGY and MARGARET KHAFAGY,<br><br>Plaintiffs,<br><br>v.<br><br>JERSEY GIRLS GENTLEMEN'S CLUB, LYNN PALEY, and 167 BAYWAY AVENUE CORP.,<br><br>Defendants. | Civil Action No. 2:10-cv-02422 (ES) (JAD)<br><br>**OPINION AND ORDER** |

JOSEPH A. DICKSON, U.S.M.J.

This matter comes before the Court upon Plaintiffs Hosam Khafegy and Margaret Khafegy's Motion to enforce late fees and related charges. (ECF No. 43). With the parties' consent, the Hon. Esther Salas, U.S.D.J. authorized this Court to "conduct all proceedings and enter a final order on the [Motion to enforce late fees] in accordance with 28 U.S.C. § 636(c)." (ECF No. 40). Pursuant to Rule 78 of the Federal Rules of Civil Procedure, no oral argument was heard. Upon consideration of the parties' submissions, and for the reasons stated below, Plaintiffs' request to enforce late fees is **GRANTED in part** and Plaintiffs' request for attorneys' fees is **DENIED**.

**I.   BACKGROUND**

Plaintiffs Hosam Khafagy and Margaret Khafagy, husband and wife, commenced this action by filing a Complaint in the United States District Court, Southern District of New York

1

against defendants, Jersey Girls Gentlemen's Club and Lynn Paley, on May 3, 2010. (ECF No. 1). The case was transferred to this Court pursuant to 28 U.S.C. §1406(a) on May 5, 2010. (ECF No. 3). On the evening of January 19, 2009, Mr. Khafagy, a professional chauffer for Speigel Limousine Services, was instructed by his employer to travel to Newark, New Jersey and pick up three passengers. (Id. at 2). The passengers requested that Mr. Khafagy drive them to Jersey Girls Gentlemen's Club located in Elizabeth, New Jersey. (Id.). After arriving at the club, the passengers asked Mr. Khafagy to wait for them in the parking lot. (Id.). About thirty minutes later, Mr. Khafagy observed an altercation amongst a number of club patrons, including his passengers. (Id.). The passengers attempted to enter the vehicle and leave the premises. (Id.). Gun shots were fired and Mr. Khafagy was struck and injured by one of the bullets. (Id.).

Plaintiffs sought monetary damages for physical, emotional, and psychological damages sustained as a result of the incident. (ECF No. 1, at 1). The suit was settled for $220,000.00, which the parties documented in a written Stipulation of Settlement ("the Settlement"). (ECF No. 31). The Hon. Esther Salas, U.S.D.J. "So Ordered" the Settlement on November 30, 2011. (ECF No. 33). The Settlement stated that the sum would be attributed to the Plaintiffs' claims as follows:

i. Plaintiff HOSAM KHAFAGY: One Hundred Sixty Five ($165,000.00) Thousand Dollars;

ii. Plaintiff MARGARET KHAFAGY: Fifty Five ($55,000.00) Thousand Dollars.

The sums aforesaid shall be paid as follows:

a. Simultaneous with the Effective Date of this Stipulation of Settlement, the Defendants shall pay the sum of Thirty ($30,000.00) Thousand Dollars, receipt of which is hereby acknowledged;

b. On or before February 15, 2012 the Defendants shall pay the sum of One Hundred Ninety ($190,000.00) Thousand Dollars.

(ECF No. 33, at 2). The Settlement also included a "Late Payment Penalty," which states,

> All payments shall be paid by check or money order payable to the firm of Gallo, Feinstein & Naishtut, LLP ("GFN") as attorneys for the Plaintiffs and shall be deemed to be timely made if <u>received</u> by GFN on or before five (5) days of the due dates set forth herein. In the event the payments set forth above are not received by GFN within the time constraints set forth above, said payment shall be deemed to be "Late." If any payment or part thereof remains unpaid more than 30 days after the due date set forth herein, the Plaintiff shall receive from the Defendants and the Defendants shall pay to the Plaintiffs, in addition to any and all sums due and owing in accordance with this Stipulation of Settlement, an additional Late Penalty equal to $5,000.00 for each and month [sic] (defined herein as 30 days) that said Late payment is not completely cured up to a total of not more than Twenty Five ($25,000.00) in late payments.

(ECF No. 33, at 2). In accordance with the Settlement, Defendants made the initial payment of $30,000.00 at the time the Settlement was executed in September of 2011. (ECF No. 43, at 3). A week before the second payment of $190,000 was due, Plaintiffs' counsel contacted Defendants' counsel, at which time Plaintiffs were informed that Defendants did not have the full amount due and "the best [Defendants] could do was pay $25,000 then the remaining $165,000 within 60 days from February 15, 2012. [Plaintiffs' counsel] neither agreed with nor rejected this position and reported same to [Plaintiffs]." (Id.). A few days later, Plaintiffs' counsel received a letter from Defendants' counsel dated February 10, 2012 confirming their "agreement" along with a check for $25,000, which Plaintiffs' counsel accepted. (Id. at 3-4).

The next payment was made on April 27, 2012, where Defendants mailed a check for $20,000 along with a letter stating, "[a]s indicated, until [Defendants] liquidate[ ] the balance, [Defendants] will be paying the sum of $20,000 per month payable at the end of the month." (Id. at 4). Defendants subsequently made payments of $20,000 on May 31, 2012, June 28, 2012 and July 27 2012, all of which Plaintiffs accepted. (ECF No. 42, at 2). There was no payment made in August of 2012. (Id.).

On September 13, 2012, Defendants' counsel sent Plaintiffs' counsel a letter enclosing a check for $50,000, which Plaintiffs accepted. (Id.). On November 6, 2012 Defendants made a

3

$10,000 payment and on November 12, 2012 Defendants made a $5,000 payment. (Id.). Both of these payments were accepted by Plaintiffs, totaling a $15,000 payment made in the month of November. (Id.). No payment was made in the month of December. (ECF No. 43, at 5). A final payment of $20,000 was sent to Plaintiffs on January 10, 2013 along with a letter that stated, "[p]er my previous correspondence, enclosed please find checks totaling $20,000.00 that remains due from the settlement between the parties." (ECF No. 42, at 2). Plaintiffs accepted the final payment and deposited the check with no further correspondence until September 5, 2013 when Plaintiffs' counsel sent Defendants' counsel a letter demanding $25,000 as a late payment penalty. (Id.).

Plaintiffs submitted to this Court a memorandum of law in support of their application for the imposition of late fees and related charges on May 27, 2014, (ECF No. 41), which was refiled on May 28, 2014. (ECF No. 43). Defendants responded on May 27, 2014 requesting that the Court deny Plaintiffs' application. (ECF No. 42).

## II.     LEGAL ANALYSIS

The essential issues raised by Plaintiffs' application are: did the parties, either by agreement or by operation of law, modify the Settlement? If so, what exactly was modified? In addition, regardless of whether the contract was modified, did Plaintiffs waive the Late Payment Penalty provision in the Settlement agreement, thereby absolving Defendants of any late fee liability? For the reasons stated below, the Court finds that the parties modified the payment schedule, and Plaintiff did not waive the Late Payment Penalty provision.

### a. Modification

Plaintiffs appear to argue that there was no modification in this case and that even if there was a modification, neither that nor the conduct of the parties could override the provisions of the contract. (ECF No. 43, at 7). The Court can, however, enforce modifications in the contract where

4

those modifications were made by the parties. "Under New Jersey law, parties to an existing contract, by mutual assent, may modify their contract, and modification can be proved by an explicit agreement to modify, or . . . by the actions and conduct of the parties, so long as the intention to modify is mutual and clear." Elliott & Frantz, Inc. v. Ingersoll-Rand Co., 457 F.3d 312, 322 (3d Cir. 2006) (quotations omitted). The Court finds that the settlement was in fact modified by the parties as to the payment schedule. "A proposed modification by one party to a contract must be accepted by the other to constitute mutual assent to modify. Unilateral statements or actions made after an agreement has been reached or added to a completed agreement clearly do not serve to modify the original terms of a contract." McGrath v. Poppleton, 550 F. Supp. 2d 564, 571 (D.N.J. 2008) (citing Cnty. of Morris v. Fauver, 153 N.J. 80 (1998)).

The Court finds, however, that the conduct of the parties in this case constitutes bilateral actions and, therefore, rise to the level of mutual assent necessary for contract modification. The contract was modified on April 27, 2012 when Defendants sent Plaintiffs a letter stating that payments of $20,000 will be made each month payable at the end of each month. (See ECF No. 43, at 4). Plaintiffs accepted the proposed modification when they accepted the payment and remained silent on the amended payment schedule. See The Flying by, 4 F. Supp. 884, 889 (D.N.J. 1933) ("There may be situations in which standing mute imputes acceptance and silence gives assent"). In fact, Plaintiffs proceeded to patiently wait and accept the payments made by Defendants for each and every payment, all of which were made pursuant to a modified schedule proposed by Defendants. It is clear to the Court that the conduct of the parties constitute bilateral action, which is sufficient to modify the terms of the agreement.

### b. Waiver

Defendants argue that Plaintiffs waived their right to enforce the late payment clause of the Settlement because Plaintiffs were aware of their right to charge Defendants with a late payment penalty and neither informed Defendants of such intentions to do so, nor did Plaintiffs invoice Defendants for such charges. (ECF No. 42, at 3). The Court finds that Plaintiffs never waived the Late Payment Penalty clause. The Settlement states, "[n]o waiver shall be binding unless it will be made in writing that will be signed by the Party making the waiver." (Id. at 4). Plaintiffs never signed a written waiver and the Court cannot modify the contract to allow a waiver where there was no writing. The modification that did occur, as discussed above, was a result of the conduct of the parties, not Court intervention. The modification in the payment schedule only affects that clause, leaving the remainder of the contract unmodified. The original terms of the contract, therefore, remain intact and continue to apply to the modified provisions. Furthermore, there was no course of conduct that the Court has seen that modified the late payment clause. Neither was this discussed by the parties. For this reason, the Late Payment Penalty clause remained applicable to the modified payment schedule resulting in the accrual of late fees, and the waiver provision retained the writing prerequisite.

### c. Laches and Equitable Estoppel

Defendants further assert that the "doctrine of laches requires that Plaintiffs forfeit their right to enforce the late payment penalty against Defendants." (Id. at 4). "Laches has been found where an inexcusable and unexplainable delay in enforcing a known right prejudiced the other party because of such delay." In re Kietur, 332 N.J. Super. 18, 28 (App. Div. 2000). Defendants allege that Plaintiffs' inexcusable and unexplainable sixteen month delay in demanding late fees caused Defendants to be harmed. (ECF No. 42, at 4-5). Defendants posit that had Plaintiffs

6

exercised their right in a timely manner, Defendants would have had an opportunity to cure the deficiency and not incur $25,000 in late fees. (Id. at 5).

The Court finds that the doctrine of laches is not applicable. The terms of the Settlement never explicitly state when the late payment penalty may be enforced. In fact, the Settlement states that, "[n]othing contained herein shall limit or qualify the Plaintiffs' rights to enforce the terms of this Stipulation of Settlement." (ECF No. 33, at 2). Because Plaintiffs' request for the imposition of late fees and related charges was made within a reasonable amount of time, Defendants were not harmed as a result of Plaintiffs' "delay" as they allege, but rather Defendants were harmed as a result of their own failure to remit payment in a timely manner pursuant to the contract.

Finally, Defendants argue that Plaintiffs should be estopped from collecting late payment penalties according to the doctrine of equitable estoppel. (Id.). On the other hand, Plaintiffs assert that there is no place for the doctrine under these circumstances arguing, "[i]t cannot be said that justice, morality or common fairness would be offended by requiring the defendants to either comply with the terms of the Stipulation of Settlement regarding payment or comply with the terms of the Stipulation of Settlement when seeking to amend the Stipulation or obtain a waiver of the right to enforce the late payment penalty." (ECF No. 43, at 8).

The Court agrees with Plaintiffs and finds that the doctrine of equitable estoppel is not a ban to Plaintiffs' Motion under these circumstances. "The doctrine of equitable estoppel is applied only in very compelling circumstances, where the interests of justice, morality and common fairness clearly dictate that course." Phillips v. Borough of Keyport, 107 F.3d 164, 182 (3d Cir. 1997) (citing Palatine I v. Planning Bd. of Township of Montville, 133 N.J. 546 (1993) (citations and quotations omitted)). The interests of justice, morality and common fairness dictate that Defendants should generally be held liable for late payments given the terms of the Settlement.

7

When interpreting contracts, the Court's obligation is clear: "[f]irst and foremost, fundamental canons of contract construction require that we examine the plain language of the contract and the parties' intent, as evidenced by the contract's purpose and surrounding circumstances." Highland Lakes Country Club & Cmty. Ass'n v. Franzino, 186 N.J. 99, 115 (2006) (citations and quotations omitted). When reading a contract, the Court's goal is to "discover the intention of the parties. Generally, [courts] consider the contractual terms, the surrounding circumstances, and the purpose of the contract." Marchak v. Claridge Commons, Inc., 134 N.J. 275, 282 (1993) (citations omitted). The plain language of the contract requires that the Defendants pay a penalty for every month the payment is late in order to deter late payments. As a result, the Court has no power to modify the contract to remove the Late Payment Penalty provision. Rather, the Court shall uphold the clause, as agreed upon by the parties.

### d. The Contract as Modified

Following the April 2012 modification, Defendants upheld the contract as modified and remitted $20,000 payments for the months of May, June, and July in 2012. (ECF No. 43, at 4). There was no payment made in August of 2012, (ECF No. 42, at 2), arguably causing Defendants to accrue the first late fee of $5,000. On September 13, 2012, however, Defendants sent Plaintiffs a check in the amount of $50,000. (ECF No. 43, at 5). Because the September payment was made within thirty (30) days of the August due date, the Court finds that $20,000 of that $50,000 applies to the month of August and another $20,000 applies to the month of September, leaving a surplus of $10,000.[1]

---

[1] As noted above, the Late Payment Penalty clause states,

> If any payment or part thereof remains unpaid more than thirty (30) days after the due date set forth herein, the Plaintiff shall receive from the Defendants and the Defendants shall pay to the Plaintiffs, in addition to any and all sums due and owing

8

Defendants did not make any payments in the month of October, (Id.), thereby incurring $5,000 in late fees. On November 6, 2012 Defendants made a $10,000 payment followed by a $5,000 payment on November 13, 2012 for a total of $15,000 paid in the month of November. (Id.). The contract as modified called for $20,000 to be paid each month at the end of the month, making Defendants $5,000 short for the month of November. There remains, however, the $10,000 surplus from the month of September, $5,000 of which can be applied to the month of November, making the required payment for that month complete. Accordingly, no late fees were incurred in November. Defendants failed to make a payment in December of 2012, (Id.), adding an additional $5,000 late payment penalty. Defendants submitted their final payment of $20,000 on January 10, 2013. (ECF No. 43, at 5). The Court, therefore, finds that given the contract modification in April of 2012, the Late Payment Penalty provision from the original contract that remained applicable to the contract as modified, and the lack of payments made in October, 2012, and December, 2012, Defendants owe $10,000.00 in late payment penalties.

e. **Attorneys' Fees**

In addition to the enforcement of late fees, Plaintiffs request that Defendants also remit payment of "reasonable counsel fees incurred by the Plaintiffs in the enforcement of the Stipulation

---

> in accordance with this Stipulation of Settlement, an additional Late Penalty equal to $5,000.00 for each and month [sic] (defined herein as 30 days) that said Late payment is not completely cured up to a total of not more than Twenty Five ($25,000.00) in late payments.

(ECF No. 33, at 2). This clause, in essence, contains a 30 day grace period. The first payment made pursuant to the modification was on April 27, 2012, thereby making all future payments due on or about the 27th of every month. The payments that followed were made on May 31, 2012, June 28, 2012, and July 27, 2012, all of which were made on time in accordance with the modified payment schedule. The August payment, therefore, was due on or about August 27, 2012. Because the September 13, 2012 payment was made within thirty (30) days of August 27, 2012 it was timely.

9

of Settlement along with such other and further relief as to this Court seems just and proper." (ECF No. 43, at 9). The Settlement's Late Payment Penalty provision states, "[i]n the event the Plaintiff shall undertake legal action to enforce the terms hereof, Plaintiffs shall be entitled to receive from the Defendants in addition to any and all sums then outstanding, all reasonable counsel fees and costs incurred by the Plaintiffs in connection with their efforts to enforce the terms hereof." (ECF No. 33). The Court finds, however, that there was a good faith dispute between the parties regarding whether Plaintiffs waived their right to enforce the Late Payment Penalty provision. Although the Court agreed with Plaintiffs and found that there was no waiver, Defendants' assertion was not unreasonable. The Court finds, therefore, that awarding Plaintiffs attorneys' fees would be improper given the good faith dispute.

### III.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to enforce late fees is **GRANTED in part** and Plaintiffs' request for attorneys' fees is **DENIED**. Defendants shall make a $10,000.00 payment to Plaintiffs in late payment penalties. In order to alleviate any future delays, confusion, or wasteful litigation, the Court Orders the $10,000.00 late fee to be paid by Defendants to counsel for Plaintiffs no later than January 31, 2015.

**SO ORDERED**

_____
JOSEPH A. DICKSON, U.S.M.J.

cc:    Hon. Esther Salas, U.S.D.J.